**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:17-CV-00104-HBB**


**MICHAEL L. BLOODWORTH**                                              **PLAINTIFF**


**VS.**


**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**                              **DEFENDANT**


**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Michael L. Bloodworth ("Plaintiff") seeking

judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both

the Plaintiff (DN 15) and Defendant (DN 22) have filed a Fact and Law Summary. For the

reasons that follow, the final decision of the Commissioner is reversed and this matter is remanded,

pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered October

19, 2017 (DN 12), the parties were notified that oral arguments would not be held unless a written

request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance Benefits on August 6, 2014[1] (Tr. 201-02). Plaintiff alleged that he became disabled on July 9, 2009, as a result of a plate and screws in his left arm, right leg, and right arm (treatment for injuries sustained in a motor vehicle accident); anxiety/panic attacks; irritability; trouble sleeping at regular times; and depression (Tr. 201, 218-19). On September 22, 2016, Administrative Law Judge Lisa R. Hall ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 35, 37). Plaintiff and her attorney, Sarah Martin, participated from Madisonville, Kentucky (Id.). James Adams, the testifying vocational expert, was present in the hearing room in Paducah, Kentucky (Id.).

In a decision dated February 23, 2017, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 18-30). The ALJ observed that Plaintiff's date last insured was December 31, 2014 (Tr. 20). At the first step, the ALJ found Plaintiff did not engage in substantial gainful activity from November 7, 2010, the alleged onset date, through December 31, 2014, his date last insured (Id.). At the second step, the ALJ determined the Plaintiff had the following severe impairments residuals of a motor vehicle accident, depression, and anxiety (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 20-21).

At the fourth step, the ALJ made the following determination:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he should never climb ladders, kneel or

---

1 The administrative decision indicates that the protective filing date was July 16, 2014 (Tr. 18).

> crawl. He can occasionally engage in other postural activities. He can perform simple, routine, repetitive tasks, meaning tasks which apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form, with the ability to deal with problems involving several concrete variables in or from standardized situations. The claimant can frequently interact with coworkers and supervisors, and occasionally with the general public.

(Tr. 22). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of his past relevant work (Tr. 28).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity (RFC), age, education, and past work experience as well as testimony from the vocational expert (Tr. 29-30). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 30). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from November 7, 2010 through December 31, 2014, the date last insured (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 198-200). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when

a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.  *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.  In summary, the evaluation proceeds as follows:

1)  Is the claimant engaged in substantial gainful activity?

2)  Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)  Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)  Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)  Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, at the fifth step, the ALJ found that Plaintiff was not disabled from November 7, 2010 through December 31, 2014.

## Challenged Findings

Plaintiff's fact and law summary and supporting memorandum set forth challenges to Finding Nos. 3, 5, and 10 (DN 16; DN 16-1 PageID # 630-35).  Plaintiff argues that Finding No. 3 fails to recognize all of his severe physical impairments (DN 16-1 PageID # 630-31).  Plaintiff challenges Finding No. 5 by asserting that substantial evidence does not support these underlying

determinations: (1) Plaintiff's severe impairments allow him to perform light work; (2) the medical opinion of Dr. Cole is not entitled to great weight; and (3) Plaintiff's statements regarding pain and other limitations are not fully credible (Id. PageID # 631-33, 634-35). And finally, Plaintiff contends Finding No. 10 is not supported by substantial evidence because the vocational expert's testimony is based on obsolete job descriptions from the Dictionary of Occupational Titles (DOT) (Id. PageID # 633-34).

A.

The Court will begin by addressing Plaintiff's challenge to Finding No. 3. Plaintiff asserts that as a result of the motor vehicle accident he suffered a closed head injury, bilateral rib fractures, pneumothorax (bruised lung), pulmonary contusions, fracture of T12, L1 and L2 vertebrae, hepatic contusion, open right wrist fracture, closed left wrist fracture, and a right tibia plateau fracture (DN 15-1 PageID # 619-20). Further, he points out that he underwent multiple surgeries and in-patient rehabilitation lasting nearly a month (Id.). Plaintiff contends the ALJ should have recognized these injuries or their resulting conditions (chronic pain syndrome, neuropathy, post-traumatic arthritis in his AC joint) and his hernia are severe impairments (Id.). Instead, Finding No. 3 minimizes them by characterizing them as "residuals" of a motor vehicle accident (Id.).

Defendant points out that the ALJ thoroughly discussed the injuries Plaintiff sustained in the motor vehicle accident as well as the surgeries and rehabilitation he underwent (DN 22 PageID # 649-51, citing Tr. 22). Therefore, argues Defendant, Plaintiff has not demonstrated that the ALJ ignored his impairments, and has not shown that the ALJ committed any error by failing to identify each injury separately (Id.). Further, Defendant asserts that the failure to designate each of

6

Plaintiff's impairments severe is a harmless error because the ALJ considered the functional limitations resulting from all of the impairments in assessing Plaintiff's residual functional capacity (RFC) (Id.).

At the second step in the sequential evaluation process a claimant must demonstrate he has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy this burden, the claimant must show he suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement (20 C.F.R. §§ 404.1509, 416.909) and "significantly limits" his ability to do one or more basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs, 880 F.2d at 863.

To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment. 20 C.F.R. § 416.908; Social Security Ruling 96-4p, 1996 WL 374187, at *1; Social Security Ruling 96-3p, 1996 WL 374181, at *2. To fulfill the "duration" requirement the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909.

Contrary to Plaintiff's assertion, the ALJ recognized the injuries/conditions caused by the motor vehicle accident and the diagnosis of midline ventral hernia (Tr. 22-25, 454). There appears to be no dispute that the accident related injuries/conditions and the hernia diagnosis satisfy the medically determinable requirement. Further, the medical evidence indicates the hernia and some but not all of the accident related injuries/conditions satisfy the duration and severity requirements. More importantly, the ALJ's use of the phrase "residuals of a motor

vehicle accident" in Finding No. 3 has not harmed Plaintiff because the ALJ specifically discussed those injuries/conditions and considered the functional limitations resulting therefrom in assessing Plaintiff's RFC (Tr. 22-28). Further, the ALJ's failure to find Plaintiff's hernia is a severe impairment is also harmless because the ALJ considered the functional limitations it caused in assessing Plaintiff's RFC (Id.). *See* Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987) (So long as an Administrative Law Judge finds that other impairments are severe, continues on with the sequential evaluation process, and considers all of a claimant's impairments in the remaining steps, the error is harmless.).

## B.

The Court will now address Plaintiff's three challenges to the RFC set forth in Finding No. 5. The RFC is an Administrative Law Judge's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546. An Administrative Law Judge makes this assessment based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Thus, in making the RFC, an Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

### 1. Assignment of Weight to Dr. Cole's Opinion

Plaintiff argues the ALJ's assignment of weight to the medical opinion of his treating physician, Dr. Cole, is not supported by substantial evidence (DN 15-1 PageID # 623). Plaintiff contends the ALJ should have assigned great weight to Dr. Cole's opinion because the limitations

expressed therein are consistent with the evidence in the record (Id.).    Plaintiff also asserts that the

ALJ failed to provide a sufficient explanation for affording no weight to Dr. Cole's opinion (Id.).

Defendant points out that the ALJ declined to accept the highly restrictive limitations

expressed by Dr. Cole because they were inconsistent with Dr. Cole's own treatment notes (DN 22

PageID # 653-55).    Defendant asserts that the ALJ also found Dr. Cole's highly restrictive

limitations were inconsistent with Plaintiff's own function report and testimony (Id.).

The Sixth Circuit has provided the following comprehensive explanation regarding the

standards for weighing medical opinions:

> Treating-source opinions must be given "controlling weight" if two
> conditions are met: (1) the opinion "is well-supported by medically
> acceptable clinical and laboratory diagnostic techniques"; and (2)
> the opinion "is not inconsistent with the other substantial evidence
> in [the] case record."   20 C.F.R.  §  404.1527(c)(2).    If the
> Commissioner does not give a treating-source opinion controlling
> weight, then the opinion is weighed based on the length, frequency,
> nature, and extent of the treatment relationship, *id.*, as well as the
> treating source's area of specialty and the degree to which the
> opinion is consistent with the record as a whole and is supported by
> relevant evidence, *id.* § 404.1527(c)(2)-(6).

> The Commissioner is required to provide "good reasons" for
> discounting the weight given to a treating-source opinion.   *Id.* §
> 404.1527(c)(2).   These reasons must be "supported by the evidence
> in the case record, and must be sufficiently specific to make clear to
> any subsequent reviewers the weight the adjudicator gave to the
> treating source's medical opinion and the reasons for that weight."
> Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec.
> Admin. July 2, 1996).   This procedural requirement "ensures that
> the ALJ applies the treating physician rule and permits meaningful
> review of the ALJ's application of the rule."   *Wilson v. Comm'r of
> Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013).

Here, the ALJ provided a thorough and accurate summation of the medical evidence in the record regarding Plaintiff's physical and mental impairments (Tr. 22-28). On January 26, 2015, Plaintiff's treating general practitioner, Dr. Cole, filled out a mental residual functional capacity questionnaire regarding Plaintiff (Tr. 519-20). Dr. Cole indicated diagnoses of chronic pain syndrome, HTN, hernia, and neuropathy (Id.). Dr. Cole opined that Plaintiff had a **Marked** degree of limitation on activities of daily living; a **Moderate** degree of limitation in maintaining social functioning; a **Marked** degree of limitation in maintaining concentration, persistence, or pace; and **Insufficient Evidence** with regard to episodes of decompensation, each of extended duration (Tr. 520).

On the same date, Dr. Cole filed out a physical residual functional capacity questionnaire (Tr. 521-25). Dr. Cole indicated the same diagnoses (Tr. 521) and, on the following page, identified depression and anxiety as conditions affecting Plaintiff's physical condition (Tr. 522). Dr. Cole opined that Plaintiff's pain and other symptoms were so severe that they would **constantly** interfere with his attention and concentration and make him **incapable** of even low stress jobs (Id.). Dr. Cole also opined that Plaintiff's ability to stand/walk was limited to **less than two hours** in an eight hour day (Tr. 523). Dr. Cole advised that Plaintiff **cannot lift at all** due to his ventral hernia (Id.). Further, Dr. Cole indicated that Plaintiff can never twist, stoop (bend), crouch/squat, climb ladders, and climb stairs (Tr. 524).

In pertinent part the ALJ's decision reads as follows:

> The undersigned carefully considered the mental and physical limitations set forth by Dr. Cole. However, the treating notes of Dr. Cole do not support the degree of limitations set forth in either opinion. The claimant has reported a good response to psychotropic medication with minimal complaints of signs and symptoms related to depression and anxiety. There is nothing in

the treating notes indicate [sic] the claimant could not tolerate a low stress job. Marked limitations in daily activities is not supported by the claimant's function report or testimony. Dr. Cole's opinion that the claimant should not lift any weight is inconsistent with treating notes, which state the claimant should avoid heavy lifting. Dr. Cole's treating notes reflect minimal to no positive clinical findings in regards to the claimant's alleged knee pain. In addition, the claimant's activities of daily living suggest a greater capacity for work-related activities than set forth in Dr. Cole's opinion. The limitations in the opinion of Dr. Cole simply cannot be supported by Dr. Cole's treating notes or other evidence of record, which warrants giving the opinion no weight. (Exhibit I IF)

(Tr. 28). The undersigned concludes that the ALJ's explanation, regarding the weight assigned to Dr. Cole's opinions, is supported by substantial evidence in the record and comports with applicable law. Therefore, Plaintiff's first challenge to Finding No. 5 is without merit.

> 2. Assessment of Plaintiff's Subjective Statements

Plaintiff argues that the ALJ discounted his testimony regarding pain and other symptoms without articulating valid reasons for doing so (DN 15-1 PageID # 623-24). Plaintiff contends he has been nothing but consistent in detailing the intensity, persistence, and limiting effects of his pain and other symptoms (Id.).

Defendant contends that the ALJ's assessment of Plaintiff's subjective statements is supported by substantial evidence and comports with applicable law (DN 22 PageID # 655-57). Further, Defendant asserts that the ALJ did not take Plaintiff's statements out of context in making this assessment (Id.).

In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p. A claimant's statement that he is experiencing pain and other symptoms will not, taken alone, establish that he is disabled; there

must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies. First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must next determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id.

When the reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. § 404.1529(c)(3). For example, the Administrative Law Judge may consider a claimant's level of daily activity in determining the extent to which pain and other symptoms are of disabling severity. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990). The Administrative Law Judge may consider the frequency that the claimant has sought treatment for the allegedly disabling conditions as a factor in assessing his subjective complaints. 20 C.F.R. § 404.1529(c)(3)(v). Another factor that may be considered is whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Still another factor that

may be considered is the medication used to alleviate the alleged pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(iv).

In pertinent part, the ALJ's decision reads as follows:

> The undersigned finds that the claimant's allegations of disabling pain and limitations since November 7, 2010, are not fully supported by the medical evidence of record, or of the severity to preclude all work. While the claimant has residual limitations precluding him from a full range of activities and tasks he performed in the past, he remains capable of performing work within the identified residual functional capacity on a regular and sustained basis. Medical evidence fails to show that his pain is of the frequency and/or severity to preclude all work given his positive response to Norco without the need for more aggressive treatment such as pain management, injection therapy, and/or surgical repair. Since his accident, the claimant has primarily complained of knee and leg pain, but he has reported a good response to Norco and no changes have been made in his medication regimen suggesting that he does get adequate symptom relief or changes would be made. There is no objective medical basis for finding the claimant has a debilitating musculoskeletal condition, but it is reasonable to find that he has impairments that cause pain, which are treated with conservative medical treatment and limit him to light duty work. He sees his primary care physician, Dr. Cole, every three months for refills of Norco without a recent referral to a specialist such as an orthopaedic [sic] physician for his knee complaints. His consultative examination was generally within normal limits and Dr. Cole's treating notes reveal no positive clinical findings to preclude light work. Furthermore, there are no indications from a provider that cost or insurance was a factor limiting medication usage or treatment. Despite the claimant's continued complaints of pain, he has not received any further treatment other than pain medication. The undersigned also notes that abnormal findings on clinical examination have generally been limited to tenderness and decreased range of motion. He is ambulatory without an assistive device. He has also acknowledged that he is independent in daily activities such as self-care, cooking, cleaning, driving, and shopping (Exhibit 7F), which would suggest light activity. In addition, in August 2011, he was instructed to return to normal activities as tolerated without mention of any specific restrictions. The undersigned gives the benefit of every doubt to the claimant when he says he experiences pain and has limited him to light work. All

the same, there exists little objective evidence in the record to substantiate the claimant's alleged disabling limitations.

In addition, the claimant's allegations of severe and disabling levels of depression and anxiety are not found fully consistent with the objective evidence to preclude the range of work set forth in the identified residual functional capacity assessment. Medical evidence fails to show that depression and anxiety are of the severity to preclude all work given his positive response to medication management. He has not been engaged in psychotherapy and there is nothing in the record indicating that such treatment is medically necessary, as he has reported good symptom control with medication. His medication has been changed occasionally for optimum symptom control with positive results. While he has generalized complaints of depression and anxiety, his complaints are treated symptomatically with prescription medication with no evidence to support a disabling mental impairment. His mental status consultative examination was generally within normal limits other than a depressed mood and anxious affect with nothing to suggest any marked or serious deficits in functioning. Overall, he is alert, focused, cooperative, and friendly, and memory and concentration are intact to allow for simple, routine and repetitive tasks. Per his function report (Exhibit 8E), he can do household chores, fix himself something to eat, do some gardening, take care of his pets, independently take care of his personal needs, drive, use a computer, and pay bills. He also does taxidermy and enjoys hunting and fishing, which he does about an hour each day. He attends church weekly and attends family gatherings once a month. He fishes in the summer and hunts in the fall. In his function report, he denied problems getting along with family, friends, and neighbors. The undersigned finds little objective evidence of record to substantiate the claimant's alleged mental limitations. Overall, the evidence of record does not reflect a degree of mental deficiency that would prevent the claimant from engaging in the range of work set forth in his residual functional capacity on a full-time, sustained basis.

The claimant testified on September 22, 2016, that he was drawing unemployment at the time of his accident in November 2010. He was able to give an adequate description of his past work and testified that he was laid off from his last job. Therefore, work did not end due to his impairments. He testified that following his accident he used a wheelchair for three months, but evidence indicates that he was using a walker when discharged from rehab in

December 2010.  He testified that he developed chronic pain and neuropathy in his leg, but evidence shows pain is adequately controlled with Norco and evidence reflects no sensory or reflex deficits about the lower extremities.   Likewise, there is no nerve conduction studies of the lower extremities to confirm neuropathy. He testified of swelling in his hands, but he has voiced minimal to no complaints of problems with his hands to treating or examining providers.  He has good range of motion of his hands and normal grip and upper extremity strength per his consultative examination. He also testified that both feet swell, but this cannot be supported by the medical evidence of record.  He testified that he was told to avoid heavy lifting in regards to his hernia, which is allocated for in the identified residual functional capacity assessment.  He testified that he does some hunting and fishing with his son.  They have a deer camp and a fishing boat.  His son is 24-years-old.  He testified that he did do all the cooking and cleaning at deer camp, but now he needs help.  He is able to ride a 4-wheeler to his deer stand. He testified that his wife gives him chores and he is able to do these with rest.  He testified that he doesn't sleep well at night, but he sleeps two to three hours every day.  It is reasonable to conclude that sleeping during the day has negatively impacted his ability to sleep at night.  There is nothing in the medical record indicating it is medically necessary for the claimant to lie down during the day and/or elevate his legs.  He testified to problems being around groups of people, and he has been limited to only occasional interactions with the public in his residual functional capacity assessment.  There is no evidence of agoraphobia and he maintains relations with family and friends.  He testified that his depression and anxiety were better with medications, which is consistent with treating notes.  He testified that he no longer has pets to care for. They have moved to an area where he doesn't have a lot of friends. He spends his time watching television and doing some taxidermy work along with his chore list.  He testified that he does the taxidermy work for his son and friends.  He has a state license to do the work and does it an hour a day.  The undersigned notes that while the claimant has some limitations, complaints of more extreme incapacity are not supported by the medical evidence of record to preclude the claimant from a range of light work.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with

the medical evidence and other evidence in the record for the
reasons explained in this decision through the date last insured of
December 31, 2014. He has not presented consistent factors
suggesting he was unable to maintain activity in accord with the
limitations allowed for in the identified residual functional capacity
assessment. Accordingly, the undersigned finds that through the
date last insured, the claimant was able to perform full-time,
sustained work activity within the limitations of the above residual
functional capacity assessment.

(Tr. 25-27).

The ALJ found from the medical record, Plaintiff's statements, and Plaintiff's testimony

that Plaintiff does not suffer pain and other symptoms to the extent he claimed. In the absence of

detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ

to resolve the issue of Plaintiff's credibility. Since tolerance of pain and other symptoms is a

highly individualized matter, and a determination of disability based on pain depends, of necessity,

largely on the credibility of the claimant, the conclusion of the Administrative Law Judge, who has

the opportunity to observe the claimant's demeanor, "should not be discharged lightly." Houston

v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of

Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that the

ALJ's findings regarding Plaintiff's credibility are supported by substantial evidence and fully

comport with applicable law.

3.      Whether Substantial Evidence Supports the RFC

Plaintiff argues the RFC failed to consider all of his severe impairments and their

combined limiting effect on his ability to perform light work with exceptions (DN 15-1 PageID #

620-22). Plaintiff asserts that the RFC is not supported by substantial evidence, including the

medical records and opinions of Dr. Cole (Id.). Plaintiff believes that the evidence demonstrates

16

that at most he could perform sedentary work which would have resulted in a finding of disabled under the Grid Rules (Id.). Plaintiff asserts there is "absolutely *no* evidence supporting" the ALJ's finding that he can perform light work (DN 15-1 PageID # 621).

Defendant argues that substantial evidence supports the RFC (DN 22 PageID # 651-53). Defendant points out that the ALJ gave great weight to the medical opinions of Drs. Sangara (non-examining state agency physician) and Polley (consultative examiner) because their opinions are consistent with the treatment records (Id.). Defendant asserts that the medical opinions of Drs. Sangara and Polley provide substantial evidence to support the ALJ's RFC (Id.).

The ALJ assigned great weight to most of the physical limitations set forth in Dr. Sangara's medical opinion because the limitations were consistent with the record as a whole, including the consultative examination by Dr. Polley, the treatment notes of Dr. Cole, and Plaintiff's level of daily activities (Tr. 27). The ALJ did not adopt Dr. Sangara's limitations for kneeling and crawling because the record indicated Plaintiff had greater limitations with regard to those physical activities (Id.). The ALJ also assigned great weight to the physical limitations expressed by Dr. Polley because the limitations were consistent with the record (Id.). The Court has reviewed the record and concludes that substantial evidence supports the ALJ's assignment of weight to the opinions of Drs. Sangara and Polley. Further, contrary to Plaintiff's assertion, the RFC considered all of Plaintiff's impairments and their combined effect (Tr. 22-28). In sum, the RFC is supported by substantial evidence in the record and comports with applicable law.

## C.

### 1.    Plaintiff's Argument

Plaintiff contends that the ALJ's fifth step determination, Finding No. 10, is not supported by substantial evidence because the vocational expert's testimony is based on obsolete job descriptions from the Dictionary of Occupational Titles (DOT) (DN 15-1 PageID # 622-23). Specifically, Plaintiff is referring to the following jobs identified by the vocational expert during the administrative hearing: (1) Hand Sander, DOT # 761.687-010; (2) Bagging Salvager, DOT # 689.687-010; and (3) Garment Sorter, DOT # 222.687-014 (Tr. 64).   Plaintiff argues that these jobs are not reliable because the DOT itself has not been updated since the 1990s and these job descriptions in particular have not been updated since the late 1970s (DN 15-1 PageID # 622-23). Plaintiff points out that when these three jobs are searched on the O*NET crosswalk it reveals that the salvage bagger and garment sorter jobs simply do not exist anymore (Id.).   Plaintiff indicates the alternatives on O*NET for salvage bagger have an SVP of 4 to 6 which is higher than permitted by the ALJ's RFC (Id.).   Plaintiff acknowledges that O*NET recognizes the hand sander job but indicates this is a physical job that requires considerable climbing, lifting, balancing, and stooping (Id.).   Plaintiff asserts that the ALJ's RFC includes a climbing limitation that would rule out this job (Id.).

### 2.    Defendant's Response

Defendant argues that the regulations specifically permit adjudicators to rely on the DOT for reliable job information (DN 22 PageID # 657-58, citing 20 C.F.R. § 404.1566(d) and Social Security Ruling 00-4p).   Defendant points out that the Social Security Administration has declined to use O*NET for this reason (Id. citing Michael J. Handel, *Methodological Issues*

*Related to the Occupational Requirements Survey*, SSA Office of Research, Demonstration, and Employment Support, (February 26, 2015, at pg. 11)).   Additionally, Defendant points out that a study revealed O*NET's data does not meet the statutory requirements of the SSA Disability Determination process (Id. citing Commissioner's Occupational Information System Project[2]). Defendant asserts that Plaintiff has not shown any error because the DOT job description for salvage bagger indicates an SVP of 1, and the description for hand sander specifies the position is performed at the light level and does not involve climbing, balancing, and stooping are not present (Id.).

   3.     Discussion

   At the fifth step in the sequential evaluation process, the Commissioner has the burden of demonstrating that a "significant" number of jobs exist in the local, regional and national economies that the claimant can perform, given his residual functional capacity, age, education, and past work experience.   20 C.F.R. § 404.1520(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   Essentially, the Commissioner can satisfy this burden in one of two ways.   When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden.   20 C.F.R. §§ 404.1569, 416.969; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990);Moon, 923 F.2d at 1181.   However, when a claimant's residual functional

---

2  The study is available at:
https://www.ssa.gov/disabilityresearch/documents/ORS%20Reliability%20Validity%20Lit%20Research.pdf

capacity does not coincide with the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

Here, the ALJ found that Plaintiff's residual functional capacity did not coincide with the criteria of Grid Rule 202.21 and 202.14 because Plaintiff could not perform a full range of light work (Tr. 29-30). Therefore, the ALJ used these Grid Rules as a framework in the decision making process and, in Finding No. 10, made a non-guideline determination based on the vocational expert's testimony (Tr. 30, 62-65). The administrative decision indicates, pursuant to SSR 00-4p, the ALJ "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles" (Tr. 30). However, the hearing transcript reveals that the ALJ did not ask the vocational expert if his opinions were consistent with the DOT (Tr. 62-69).

The Sixth Circuit has made clear that there is no "magic number" that qualifies as "significant" for the purposes of satisfying this prong of the disability inquiry. Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988). Instead, the Court must make a fact-specific inquiry that is guided by common sense:

> We are not blind, however, to the difficult task of enumerating exactly what constitutes a "significant number." We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of jobs. . . . A judge should consider many criteria in determining whether work exists in significant numbers, some of which might

> include: the level of claimant's disability; *the reliability of the vocational expert's testimony*; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

Id. (emphasis added). Here, Plaintiff challenges the *reliability* of the vocational expert's testimony by asserting it was based on obsolete occupational descriptions in the DOT.

The vocational expert based her testimony on three job descriptions contained in the DOT, a document published by the United States Department of Labor ("DOL") that was last updated in 1991.[3] The regulations provide that the Commissioner "will take administrative notice of reliable job information available from various governmental and other publications." 20 C.F.R. §§ 404.1566(d), 416.966(d); Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The regulations include the DOT within their non-exhaustive list of examples of sources from which reliable job information is available. 20 C.F.R. §§ 404.1566(d)(1)-(5), 416.966(d)(1)-(5); *see* Wennersten v. Colvin, No. 12-cv-783-bbc, 2013 WL 4821474, at * (W.D. Wis. Sept. 10, 2013) ("the list is not exclusive"). Thus, a vocational expert may base his testimony on job descriptions in the DOT. However, the Sixth Circuit, albeit in an unpublished opinion, has made the following cautionary statement: "*common sense dictates* that when such descriptions appear obsolete, a more recent source of information should be consulted." Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) (emphasis added).

---

3 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTSPEC.HTM

At the time of Plaintiff's administrative hearing before the ALJ, more current occupational descriptions were available. Specifically, the DOL replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001.[4] *See* Cunningham, 360 F. App'x at 616; Johnson v. Berryhill, No. 4-16-CV-00106-HBB, 2017 WL 245326, *8 (W.D. Ky. June 6, 2017). In Cunningham, the Sixth Circuit compared the job descriptions in the DOT with those set forth in O*NET to determine whether the vocational expert based her testimony on obsolete job descriptions. 360 F. App'x at 615-16.

The Court notes that on December 9, 2008, then Commissioner Michael J. Astrue established the Occupation Information Advisory Panel (OIDAP) to provide independent advice to the Social Security Administration on forming a new occupational information system (OIS) to replace the DOT for the SSA's disability adjudication system (Content Model and Classification Recommendations for the Social Security Administration Occupational Information System, at pp. 1-2, 7, Sept. 2009 [5]). In September of 2009, the OIDAP issued a report that, among other things, acknowledged the Department of Labor's decision to replace the DOT with O*NET (Id. at pp. 9). The OIDAP report observed that the SSA evaluated O*NET but found, because "it was developed for career development and exploration purposes, it is not suited to disability evaluation" (Id.). The Court acknowledges that the SSA is developing its own OIS that will use a data collection

---

4 https://www.onetcenter.org/dataCollection.html

5 Occupational Information Advisory Panel, https://www.ssa.gov/oidap/, (last visited May 23, 2018).

process called the Occupational Requirements Survey (ORS) to keep the job information current.[6] However, the OIS is not scheduled to be online until at least 2020.[7]

The SSA's determination regarding O*NET predates the Sixth Circuit's opinion in Cunningham. Moreover, neither the Sixth Circuit in Cunningham nor this Court here is suggesting that O*NET is more appropriate than the DOT for use in disability adjudications. Instead, the Sixth Circuit and, by extension, this Court are merely recognizing that O*NET is a more recent source of job information that courts may consult when the descriptions in the DOT appear obsolete. *See* Cunningham, 360 F. App'x at 615-16. Thus, until Defendant identifies an alternative resource, this Court will be guided by the Sixth Circuit's holding in Cunningham and will compare the job descriptions in the DOT with those set forth in O*NET to determine whether the vocational expert based his testimony on job descriptions that may be obsolete. *See* Id. at 615.

In response to the ALJ's question during the administrative hearing, the vocational expert opined that the hypothetical individual should be able to perform the following jobs: bagging salvager (DOT # 689.687-010), there are 395,000 such jobs nationwide; garment sorter (DOT # 222.687-014), there are 230,000 such jobs nationwide; and hand sander (DOT # 761.687-010), there are 41,000 such jobs nationwide (Tr. 64). Notably, in light of the mental limitations set forth in the ALJ's hypothetical question, the vocational expert identified unskilled jobs with an SVP of 1 or 2 (Tr. 63-64). The abbreviation SVP means Specific Vocational Preparation and "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire

---

6 Social Security Online - Occupational Information System Project,
https://www.ssa.gov/disabilityresearch/occupational_info_systems.html, (last visited May 23, 2018).

7 Id.

the information, and develop the facility needed for average performance in a specific job-worker situation."[8]   An SVP of 1 involves a "[s]hort demonstration only."[9]   An SVP of 2 comprises "[a]nything beyond short demonstration up to and including 1 month."[10]

The DOT description for the first identified job reads as follows:

**689.687-010 BAGGING SALVAGER (textile) alternate titles: sack-cleaning hand**

Salvages sacks and bagging used as covering for raw stock fiber: Removes adhering stock fibers from sacks and bagging by hand. Places bagging in sacks or folds and stacks bagging for reuse. May straighten and place metal tie bands in bundles. May dip tie bands in paint for reuse.

GOE: 06.04.38 STRENGTH: L GED: R1 M1 L1 SVP: 1 DLU: 77

DOT (1991), *available at* http://www.oalj.dol.gov (follow "DOT" hyperlink; then follow "Machine Trades Occupations: 689.134 to 699.687-022" hyperlink).   The definition trailer that follows the occupational description indicates an SVP of 1; and "DLU: 77" which means the description was last updated in 1977. [11]

The DOT Crosswalk Search Option on O*NET did not reveal a comparable job description.[12]   The Court also utilized O*NET's Occupation Search, Find Occupations, and Advanced Search options but did not find a similar job description.   The closest the Court could

---

8 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

9 Id.

10 Id.
11 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

12 https://www.onetonline.org/crosswalk/DOT?s=689.687-010&g=Go

find on O*NET was "51-9198.00 – Helpers-Production Workers".[13]   However, the "Job Zone"

section of that O*NET job description indicates an SVP range of 4.0 to < 6.0.[14]   Such an SVP

range would involve job training that takes more than 3 months to a year[15] and suggests this job

may not be classified as unskilled.   This is a substantially higher SVP than what is indicated in the

DOT job description and may be the result of automation since the DOT job description was last

updated.   In light of the fact that the vocational expert relied on a DOT job description that was

over 40 years old and cannot be found on O*NET, the Court concludes the vocational expert's

reliance on the DOT job description alone does not warrant a presumption of reliability.

The DOT description for the second identified job reads as follows:

> **222.687-014 GARMENT SORTER (garment)**
>
> Verifies quantities, quality, condition, value, and type of articles purchased, sold, or produced against records or reports.   May sort data or items into predetermined sequence or groups.   May record items verified.   May be designated according to type of establishment as Warehouse Checker (clerical).
>
> GOE: 07.07.02 STRENGTH: L GED: R2 M2 L2 SVP: 2 DLU: 80

DOT (1991), *available at* http://www.oalj.dol.gov (follow "DOT" hyperlink; then follow "Clerical

and Sales Occupations: 219.362-050 to 243.367-018" hyperlink).   The definition trailer that

follows the occupational description indicates an SVP of 2; and "DLU: 80" which means the

description was last updated in 1980. [16]

---

13  https://www.onetonline.org/link/summary/51-9198.00

14  Id.

15  https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

16  https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

The DOT Crosswalk Search Option on O*NET did not reveal a comparable job description.[17]  The Court also utilized O*NET's Occupation Search, Find Occupations, and Advanced Search options but did not find a similar job description.   The closest the Court could find on O*NET was "51-9198.00 – Helpers-Production Workers" but that job description indicates an SVP range of 4.0 to < 6.0.[18]   In light of the fact that the vocational expert relied on a DOT job description that is more than 37 years old and cannot be found on O*NET, the Court concludes the vocational expert's reliance on the DOT job description alone does not warrant a presumption of reliability.

The DOT description for the third identified job reads as follows:

### 761.687-010 SANDER, HAND (woodworking)

Smooths surface of wooden articles, such as furniture parts, mirror frames, caskets, and cabinet panels preparatory to finishing, or between finish coats, using sandpaper and steel wool.   Feels surface of sanded article for smoothness.   May scrape article with chisel or scraper to remove burrs, splinters, and excess glue.   May mark defects, such as knotholes, cracks, and splits to facilitate repair of article.   May be designated Finish Sander (woodworking); First-Coat Sander (woodworking).

GOE: 06.04.25 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 79

DOT (1991), *available at* http://www.oalj.dol.gov (follow "DOT" hyperlink; then follow "Benchwork Occupations: 761.684-022 to 781.384-018" hyperlink).   The definition trailer that

---

17 https://www.onetonline.org/crosswalk/DOT?s=222.687-014+&g=Go

18 https://www.onetonline.org/link/summary/51-9198.00

follows the occupational description indicates and SVP of 2; and "DLU: 79" which means the description was last updated in 1979.[19]

The DOT Crosswalk Search Option on O*NET did not reveal a comparable job description.[20] The Court also utilized O*NET's Occupation Search, Find Occupations, and Advanced Search options but did not find a similar job description. The closest the Court could find on O*NET was "51-7021.00 – Furniture Finishers" which reads as follows:

> Shape, finish, and refinish damaged, worn, or used furniture or new high-grade furniture to specified color or finish.
>
> Sample of reported job titles: Finish Repair Worker, Finisher, Furniture Finisher, Hand Sander, Lacquer Sprayer, Sander, Sealer Sander, Sprayer, Stain Sprayer, Stain Wiper

https://www.onetonline.org/link/summary/51-7021.00. Notably, the O*NET description covers a broader range of activities and use of tools. Id. This may explain why the "Job Zone" section of the O*NET description indicates a higher SVP range (4.0 to < 6.0). Id. The next closest that the Court could find was "51-9022.00 - Grinding and Polishing Workers, Hand" which reads as follows:

> Grind, sand, or polish, using hand tools or hand-held power tools, a variety of metal, wood, stone, clay, plastic, or glass objects. Includes chippers, buffers, and finishers.
>
> Sample of reported job titles: Buffer, Casting Finisher, Chipper, Deburring Technician, Finisher, Grinder, Jewelry Polisher, Knife Grinder, Metal Finisher, Polisher

https://www.onetonline.org/link/summary/51-9022.00. However, this O*NET description

---

19 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

20 https://www.onetonline.org/crosswalk/DOT?s=761.687-010&g=Go

indicates a broader occupational landscape and greater emphasis on the use of power tools to accomplish tasks. These differences may explain why the "Job Zone" section of the O*NET description indicates a higher SVP range (Below 4.0). Id. In light of the fact that the vocational expert relied on a DOT job description that was more than 38 years old and cannot be found on O*NET, the Court concludes the vocational expert's reliance on the DOT job description alone does not warrant a presumption of reliability.

The above identified discrepancies, between the DOT and O*NET, present sufficient doubt as to the reliability of the vocational expert's testimony to warrant a conclusion that the ALJ's step five determination (Tr. 29-30, Finding No. 10) was not supported by substantial evidence. After all, "[i]f the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs." Herrmann v. Colvin, 772 F.3d 1110, 1113 (7th Cir. 2014). Notably, the Court is not concluding that these positions are obsolete, nor that they do not exist in significant numbers. Rather, the Court is recognizing that Plaintiff has created sufficient doubt to merit remand so that a vocational expert can determine whether these positions, as performed in the modern economy, were still available to the Plaintiff, from November 7, 2010 through December 31, 2014, given his age, work experience, education, and RFC.

There is an additional matter that both parties have overlooked. Contrary to what is set forth in the administrative decision (Tr. 30), the ALJ did not determine whether the vocational expert's testimony was consistent with the DOT (Tr. 62-69). It is well settled law that SSR 00-4p

imposes an "affirmative responsibility" on Administrative Law Judges to ask about any possible conflicts between the vocational expert's testimony and information provided in the DOT. *See* Lindsley v. Comm'r Soc. Sec., 560 F.3d 601, 606 (6th Cir. 2009); Bobo v. Berryhill, No. 1:16-CV-2722, 2017 WL 7051997, at *20 (N.D. Ohio Sept. 21, 2017). This affirmative duty was triggered in the present case because the vocational expert proffered evidence during the administrative hearing in the form of expert testimony (Tr. 62-69). The ALJ is reminded of her affirmative duty under SSR 00-4p.

In light of the above conclusion, the final decision of the Commissioner will be reversed and this matter will be remanded, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration of whether the DOT listings, specifically bagging salvager (DOT # 689.687-010), garment sorter (DOT # 222.687-014), and hand sander (DOT # 761.687-010), were reliable in light of the economy as it existed during the relevant time frame. *See* Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 175 (6th Cir. 1994) (sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand).

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Copies:          Counsel